23 C.C.P.A.(Patents)

## In re CHRISTENSEN.

**Patent Appeal No. 3437.**

Court of Customs and Patent Appeals.

April 6, 1936.

Rehearing Denied April 27, 1936.

Harold T. Stowell, of Washington, D. C. (Joseph R. Mares, of St. Louis, Mo., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected all appellant's claims in an application for a patent relating to the treatment of cream and other dairy products. The Board of Appeals affirmed the action of the Examiner, and from the decision of the Board appellant has here appealed.

The rejected claims are numbered 2, 4, 6, 8, 9, 11 to 15, inclusive, 18 to 23, inclusive, and 26. Claims 2, 4, 6, 9, 11 to 13, inclusive, 19 to 23, inclusive, and 26 are drawn to cover the main feature of the alleged invention—the use in cream treatment of an organic material having available chlorine. Some of this group of claims also contain the step of pasteurizing after the chlorine treatment. The organic chlorine material is more specifical-

ly defined in some of the claims than in others by such terms as "organic chloramine," "an aromatic chloramine," or "an aromatic sulphochloramide." Claim 2 is typical of this group. Claim 8 calls for the treatment of a dairy product with an organic chloramine and thereafter removing any excess of available chlorine. Claim 14 contains the step of treating with an organic material having available chlorine, and then using a neutralizer. Claims 15 and 18 define compositions of matter including an organic material containing available chlorine and a neutralizer. Claim 15 is said to be in generic terms and claim 18 specific. Claims 2, 15, and 18 are regarded as typical and follow:

"2. The method of treating cream having unnatural objectionable flavors that comprises treating the cream with an aqueous solution of an organic composition having available chlorine whereby the objectionable flavors are eliminated and subsequently pasteurizing the treated cream product."

"15. A composition of matter for the treatment of dairy products consisting of a neutralizer admixed with an organic material capable of liberating chlorine in aqueous solution."

"18. A composition of matter for the treatment of cream consisting of the following in substantially the proportions set forth: soda ash 70%, sodium bicarbonate 25%, sodium chloride 3%, alkali metal aromatic sulphochloramide 2%."

The references relied upon are: Fox et al., 1,114,875, October 27, 1914; Young, 1,451,857, April 17, 1923; German patent, 408,647, December 13, 1923; Bosworth et al., 1,563,891, December 1, 1925; Rogers, 1,570,646, January 26, 1926; Harold (Br.), 245,820, January 7, 1926; Hunziker, 1,723,-860, August 6, 1929; Textbook of Organic Chemistry, Bernthsen-Sudborough, Pub. by D. Van Nostrand Co., N. Y., 1925, page 803; U. S. Dispensatory—Wood & Lowall, Pub. by Lippincott Co., 1926, pp. 326, 327.

Appellant in his brief, in referring to his invention, states, in substance, that he found that, when cows feed upon common vegetation such as wild onions, ragweed, etc., as well as certain varieties of fodder, for instance, ensilage, the milk possesses a distinct flavor and renders the dairy product of inferior quality; that it has been a great problem to take away this obnoxious or so-called "off-flavor"; that he found that said undesirable tastes and odors

could be effectively removed from milk and cream by treating the same with organic chlorine compounds in which the chlorine is attached to a nitrogen atom and that such compounds are generically known as "chloramines"; that he discovered that inorganic hypochlorites, which had been previously proposed as disinfectants for milk and cream, were not suited to the solution of his problem, inasmuch as the hypochlorites, if used in sufficient quantities to eliminate odors and tastes, imparted to the product a permanent, unpleasant metallic taste; that he learned that, if he used an amount of chloramine sufficient to impart a characteristic chlorine taste to the milk and cream, the objectionable odors and taste were permanently eliminated and that the excessive chlorine taste which was left could readily be removed by pasteurization which might include either a vacuum or centrifugal treatment.

The patent to Fox et al. discloses a process of treating milk, cream, butter fats, and the like with hypochlorous acid for the purpose of purifying these materials and removing foul odors, as well as destroying injurious bacteria and germs.

The German patent cited discloses the treatment of fats and margarine with chloramines for the purpose of preserving the same and rendering the odor of the margarine fresher and more like that of butter.

■ All the claims were rejected on the patent to Fox et al. and also on the German reference. It was held that organic chloramines and hypochlorous acid are well-known equivalents and that the use of chloramines for removing odors from milk and cream did not involve invention over what Fox et al. did—using hypochlorous acid for the purpose of killing germs and removing the foul odors from cream and milk.

To establish that the hypochlorous acid and the chloramines were equivalents, the Examiner cited the United States Dispensatory (pages 326, 327) and the textbook on chemistry by Bernthsen-Sudborough (page 803).

The Examiner also cited patents to Harold and Young which disclose the use of chloramines as sterilizing and germicidal agents.

He cited the patents to Hunziker, Rogers, and Bosworth which relate either to pasteurization, vacuum treatment, centri-fuge treatment, or neutralization and show that these steps were old in the art.

The composition claims 15 and 18 were further rejected upon the ground that each called for a mixture of chemical reagents, each of which functions in a known way to produce only expected and obvious results, and it being well understood that a neutralizer would neutralize chlorine. The Examiner said:

"The claims (15–18) call for such a mixture of materials as would lie well within the expected knowledge of any skilled chemist working in the art having before him the disclosures in the references cited. Attention is directed to the decision of the United States Supreme Court in the case of Hollister v. Benedict & B. Mfg. Co., 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901, in which the Court stated:

" 'It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the Constitution and patent laws to encourage and reward.' "

A number of the claims, for instance 19, indefinitely suggest the amount of chlorine to be used by requiring that aromatic sulphochloramide or other chloramine shall be added until there is a chlorous taste perceptible, after which the material is pasteurized.

It is the position of the Patent Office tribunals that it did not require invention to determine the amount of chlorine to be used; that this was a matter for experimentation after it was known that such material or its equivalent would remove odors, and that certainly it was not inventive to then pasteurize or otherwise treat the milk to remove the chlorine taste. It was held by the tribunals that the proportions of the composition set forth in claim 18 were not claimed to be critical and were not of such significance as to establish a basis upon which to predicate patentable novelty. It is pointed out that in appellant's application, referring to the effect of his neutralizer, he says: "* * * As are commonly employed in formulating present day neutralizers. The ratio of the chlorinating reagent to the neutralizer may likewise be varied. * * * This neutral-

izer is added in a manner analogous to that now practiced in the case of an ordinary neutralizer. * * * "

Appellant in this court argues that the Fox et al. and the German patents do not relate to the method of destroying offensive odors, except those of putrefaction, in cream or milk nor solve the problem which he has solved.

The Patent Office tribunals, as before stated, held that chloramines and hyperchlorites were equivalents, as was shown by the said pertinent references, and that appellant's parent application (of which the one at bar is a continuation), when filed, clearly indicated that, for the purpose of destroying flavors and odors, chloramines and hyperchlorites were by the appellant regarded as equivalents.

We agree with the conclusion of the Board that the hyperchlorites used by Fox et al. in cream and milk and the chloramines used by appellant and by the German patentee are equivalents, and that it did not involve invention to substitute the one for the other. Moreover, knowing the teachings of the German patent as to the use of chloramines to remove odors from margarine, it would not be inventive to use the same to remove particular kinds of odors from milk, cream, or other dairy products.

We also agree with the tribunals that patentability of any of the involved claims cannot be predicated upon the fact that, after treatment with said odor remover, such obvious steps as pasteurization, vacuum treatment, and centrifuge treatment are resorted to.

We also are in accord with the holding of the tribunals that the feature of adding as an intermediate step a sufficient quantity of chloramines to make the material taste of chlorine is the obvious thing to do by one skilled in the art. None of the steps in any of the claims show the criticalness of the quantity used.

In urging patentable novelty for his process, appellant seems to stress the fact that he has discovered that chloramines, when used in the manner stated, will remove odors from milk or cream, which odors are of that particular kind which come from certain kinds of feed. We think that, since it was well known that chloramines or their equivalent were useful in removing undesirable odors from milk or cream, this new result which ap-

pellant claims to have discovered would not suggest invention. Even if this matter were expressed in all the claims (and it is not), we do not think that appellant is entitled to inventive reward for discovering a new result of an old process. In re Burk, 73 F.(2d) 497, 22 C.C.P.A. (Patents) 731; In re Dreyfus, 65 F.(2d) 472, 20 C.C.P.A. (Patents) 1204.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.